# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| ISABELLA CARRUTH,<br><br>                        *Plaintiff*,<br><br>v.<br><br>WALMART, INC.; WAL-MART STORES TEXAS, LLC; and WAL-MART STORES TEXAS, LP,<br><br>                        *Defendants*. | **Civil Action No.** 6:23-cv-664<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Isabella Carruth, through her attorneys, Eisenberg & Baum, LLP, states her Complaint against Defendants Walmart, Inc.; Wal-Mart Stores Texas, LLC; and Wal-Mart Stores Texas, LP (collectively, "Wal-Mart"):

## INTRODUCTION

1.    Wal-Mart banned Isabella Carruth from Supercenter #69296801 simply because she tried to enter the store with her service dog, Dante, who was unleashed. However, under the Americans with Disabilities Act and its Texas counterpart, not every service animal must be leashed.

2.    According to federal regulations, which authoritatively construe the ADA, a service animal does not require a leash if it would interfere with (1) the service animal's work or (2) the person with a disability's use of such a device. 28 C.F.R. § 35.136(d). Both exceptions are met here.

3.    First, a leash would interfere with Dante's work. Dante retrieves items and engages in crowd control, constantly changing from different motions and positions. Dante could not perform this constant movement while leashed, and passing a leash back and forth between

1

Ms. Carruth's hands would defeat the purpose of Dante's work.

4.  Second, Ms. Carruth is unable to use such a leash because of her disabilities. Her heart rate can skyrocket within seconds to 130-150 beats per minute if she retrieves an item, and she has an aversion to touch, which is why Dante retrieves items for her and why she cannot constantly hold a leash.

5.  Ms. Carruth recited this federal regulation to a Wal-Mart greeter, a store manager, and an apparent district manager—to no avail. She was laughed at and ridiculed in public. Thus, Wal-Mart intentionally discriminated Ms. Carruth when it prevented her from entering the store and then subsequently banned her from that location.

6.  Wal-Mart's discrimination against Ms. Carruth caused her to suffer anger, humiliation, frustration, and mental anguish. Indeed, civil-rights violations are inherently distressing because they inflict a profound personal humiliation and reinvoke a history of exclusion.

7.  Ms. Carruth brings this action seeking nominal and compensatory damages; declaratory, injunctive, and equitable relief; and attorney's fees and costs to redress Wal-Mart's unlawful discrimination against her on the basis of her disabilities in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*; and the Texas Human Resources Code ("THRC").

**PARTIES**

8.  Plaintiff Isabella Carruth is a resident of Temple, Texas, who has "disabilities" within the meaning of state and federal civil rights laws. Her Autism substantially limits brain function, and her reactive hypoglycemia and Postural Orthostatic Tachycardia Syndrome ("POTS") affects the major life activities of caring for herself and performing manual tasks. Her

2

service dog, Dante, helps her perform tasks to ameliorate her disabilities.

9. Defendant Walmart, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Arkansas.

10. Defendant Wal-Mart Stores Texas, LLC is a limited liability company formed under the laws of Delaware with its principal place of business in Arkansas.

11. Defendant Wal-Mart Stores Texas, LP is a business entity existing under the laws of the State of Texas.

12. Upon information and belief, Defendants were and still are the owners of the premises known as Walmart Supercenter #69296801, which is located at 6801 W. Adams Avenue, Temple, TX 76502.

13. Upon information and belief, Defendants operated, managed and/or maintained, supervised and/or controlled the premises known as Walmart Supercenter #69296801, which is located at 6801 W. Adams Avenue, Temple, TX 76502.

14. Upon information and belief, Defendants failed to operate, manage, maintain, supervise and/or control the premises known as Walmart Supercenter #69296801, which is located at 6801 W. Adams Avenue, Temple, TX 76502, in a safe condition.

15. Upon information and belief, Defendants operate, manage, maintain, supervise and/or control a place of public accommodation.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction for the federal-law claim pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States. This Court also has supplemental jurisdiction for the state-law claim pursuant to 28 U.S.C. § 1367 because that claim is substantially related to the federal-law claims.

17. Venue is proper in this District under 28 U.S.C. § 1391(b) because, among other things, Defendants reside in this District and the acts and omissions giving rise to this Complaint occurred in this District.

## CONDITION PRECEDENT FOR TEXAS HUMAN RESOURCES CODE CLAIM

18. Pursuant to Tex. Hum. Res. Code § 121.0041(c), a claimant must give written notice of its claims to a defendant "[n]ot later than the 60th day before the date an action to which this section applies is filed."

19. On July 7, 2023, Plaintiff provided notice by letter to Defendants, which included Plaintiff's name, a description of each alleged violation in reasonable detail, and the date, place, and manner in which Plaintiff discovered each alleged violation.

20. On July 11, 2023, Defendants received service of such letter. Sixty days later, by September 9, 2023, Defendants did not issue a response consistent with Tex. Hum. Res. Code § 121.0041(d) or Tex. Hum. Res. Code § 121.0041(e).

21. As such, Plaintiff has timely complied with the requirements of Tex. Hum. Res. Code § 121.0041(c), *et seq.*, as a prerequisite to commencing this suit for violations of the THRC.

## STATEMENT OF FACTS

22. In the afternoon on September 9, 2022, Ms. Carruth and her service dog, Dante, attempted to enter Walmart Supercenter #69296801 located at 6801 W. Adams Avenue, Temple, TX 76502.

23. Pursuant to state and federal law, Dante was not leashed. A greeter named Charles told Ms. Carruth that Walmart policy[1] requires Dante to be leashed. Charles also asked to see

---

[1] According to corporate policy, however, "Walmart welcomes service animals as defined by the ADA in [its] stores." https://corporate.walmart.com/askwalmart/does-walmart-allow-animals-in-its-stores.

4

Dante's identification.

24. Ms. Carruth advised Charles that the governing law forbids such a question[2] and that Dante is permitted to be unleashed. Specifically, Ms. Carruth provided the relevant laws as well as the two questions Charles may ask as an acting employee of the entity. Charles denied these questions as being accurate and again (illegally) requested certification for Dante, stating he knew it existed due to him recently certifying his own dog.

25. Once again, Ms. Carruth asked to speak with a manager. Charles declined to get one, but a store manager named Lee was within earshot and spoke with Ms. Carruth.

26. Lee also took the position that Walmart policy required Dante to be leashed, and so Ms. Carruth once again explained the governing law: "A service animal shall have a harness, leash, or other tether, *unless* either the handler is unable because of a disability to use a harness, leash, or other tether, or the use of a harness, leash, or other tether would interfere with the service animal's safe, effective performance of work or tasks, in which case the service animal must be otherwise under the handler's control (*e.g.,* voice control, signals, or other effective means)." 28 C.F.R. § 35.136(d) (emphasis added).

27. Lee even read 28 C.F.R. § 35.136(d) through Walmart's Managerial Assistance Portal provided by Walmart corporate for managers and persons of authority—but stopped short of the word "unless."

---

[2] "Except as provided by Subsection (l), a person is not entitled to make demands or inquiries relating to the qualifications or certifications of a service animal for purposes of admittance to a public facility except to determine the basic type of assistance provided by the service animal to a person with a disability." Tex. Hum. Res. Code § 121.003(k). Subsection (l) permits two questions if "a person's disability is not readily apparent, for purposes of admittance to a public facility with a service animal": "(1) whether the service animal is required because the person has a disability; and (2) what type of work or task the service animal is trained to perform." Tex. Hum. Res. Code § 121.003(l).

28. After further communication and Walmart's denial of the entrance unless Ms. Carruth leashed Dante, she asked Lee if he would prefer if she called the Temple Police Department and asked for an officer to explain the laws. Lee said, "Call them." Ms. Carruth then asked again, "You want me to call the police?" and Lee said, "Go ahead. Call 'em! Let me know when they get here." A police officer eventually arrived.

29. Throughout this ordeal, Charles, Lee, and an apparent Walmart district manager were laughing at Ms. Carruth, dismissing her concerns and humiliating her. She will not forget how unapologetic Walmart staff were as they mocked and berated her in front of other patrons and employees.

30. Ultimately, Ms. Carruth was prevented from entering the store unless Dante was leashed, and she has been banned from Walmart Supercenter #69296801 simply because she tried to enter the store with Dante.

31. Wal-Mart intentionally discriminated against Ms. Carruth and acted with deliberate indifference to her civil rights. Upon information and belief, Wal-Mart knew of its obligations under state and federal antidiscrimination laws to develop policies to promote compliance with these statutes.

32. Wal-Mart's discrimination against Ms. Carruth not only caused emotional distress but violated her civil rights. Wal-Mart deprived her of the full and equal enjoyment of its benefits and services.

33. Wal-Mart knew its actions and inactions created an unreasonable risk of causing Ms. Carruth greater levels of emotional distress than a person without a disability would be expected to experience.

34. Wal-Mart intentionally and deliberately discriminated against Ms. Carruth by

treating her differently than other individuals without disabilities.

35. Ms. Carruth had a previous issue with her service animal at Walmart Supercenter #69296801 in 2020, in which she was banned and then later unbanned.

36. Ms. Carruth still intends to return to Wal-Mart in the future because Walmart Supercenter #69296801 is the closest Wal-Mart location at a six-minute drive. The other closest locations are either a 12-minute[3] or 16-minute drive.[4] Ms. Carruth also has an intention to return to Walmart Supercenter #69296801 because before her ban, she often went two times per week.

## CAUSES OF ACTION

### COUNT I: Violations of Title III of the Americans with Disabilities Act

37. Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

38. At all times relevant to this action, Title III of the ADA has been in full force and effect and has applied to Defendants' conduct.

39. At all times relevant to this action, Plaintiff is an individual with disabilities within the meaning of the ADA, 42 U.S.C. § 12102(2); her Autism substantially limits her ability to complete major life activities without the assistance of a service animal and is disabling because of how Autism impacts her ability to process sensory information, socially interact with others, manage repetitive motor movements, transition through changes in routine, noise sensitivity, and verbally communicating effectively such as to request assistance especially when she is in distress. Her reactive hypoglycemia and POTS (short for Postural Orthostatic Tachycardia Syndrome) affect the major life activities of caring for herself and performing manual tasks.

---

[3] Walmart Supercenter #12322604 located at 2604 N. Main St, Belton, TX 76513.
[4] Walmart Supercenter #7463401 located at 3401 S. 31st St, Temple, TX 76502.

40. Ms. Carruth's service dog, Dante, helps her perform tasks to ameliorate her disabilities. If Ms. Carruth faints or falls down, Dante will lay on top of her and alert others close by for help. Being leashed could cause Dante to become trapped, hurt, or otherwise unable to perform his relevant tasks. Dante is also trained to retrieve dropped items Ms. Carruth is unaware that she dropped as well as items on command. In addition to the above, Dante is well-versed and trained in crowd control due to Ms. Carruth's aversion to touch—both being touched and a touching prolonged holding of objects.

41. Defendants own, lease, and/or operate a place of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(F).

42. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

43. Title III of the ADA defines discrimination to include denying participation or offering unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A).

44. Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

45. Defendants discriminated against Plaintiff, on the basis of her disability, in violation of Title III of the ADA by preventing her from entering Supercenter #69296801 and then banning her simply because she tried to enter the store with her service dog, Dante, who was

unleashed.

46. According to federal regulations, which authoritatively construe the ADA, a service animal does not require a leash or tether if it would either interfere the service animal's work or the person with a disability's use of such a device. 28 C.F.R. § 35.136(d). If either exception is met, the person with a disability must maintain control of the service animal through "voice control, signals, or other effective means." *Id.*

47. Here, both exceptions are met. First, a leash or tether would interfere with Dante's work. When he retrieves items and engages in crowd control, Dante will constantly change from different motions and positions—for example, he may circle around Ms. Carruth as she looks at items, then go between her legs, and then enter a "back block" motion where he is position directly behind her. Dante could not perform this constant movement while leashed or tethered, and passing such a device back and forth between Ms. Carruth's hands would defeat the purpose of Dante's work.

48. Second, Ms. Carruth is unable to use such a device because of her disabilities. Her heart rate can skyrocket within seconds to 130-150 beats per minute if she retrieves an item, and she has an aversion to touch, which is why Dante retrieves items for her and why she cannot constantly hold a leash.

49. Plaintiff is therefore entitled in injunctive relief as well as an award of attorney's fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. §§ 12188(a)(1) & (2).

**COUNT II: Violations of Chapter 121 of the Texas Human Resources Code**

50. Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

51. At all times relevant to this action, the THRC has been in full force and effect and

has applied to Defendant's conduct.

52. Chapter 121 of the THRC states that "[t]he policy of the state is to encourage and enable persons with disabilities to participate fully in the social and economic life of the state, to achieve maximum personal independence, to become gainfully employed, and to otherwise fully enjoy and use all public facilities available within the state." Tex. Hum. Res. Code § 121.001.

53. Defendants fall within the meaning of "public facilities" under Tex. Hum. Res. Code § 121.002(5), as Defendants are "a retail business, commercial establishment, or office building to which the general public is invited," and because it is a "place of public accommodation . . . to which the general public or any classification of persons from the general public is regularly, normally, or customarily invited."

54. Dante is an "assistance animal" (or "service animal") who assists Ms. Carruth, a "person with disability." Tex. Hum. Res. Code § 121.002(1) & (4). She has Autism, reactive hypoglycemia, and POTS (short for Postural Orthostatic Tachycardia Syndrome).

55. Chapter 121 of the THRC states that "[p]ersons with disabilities have the same rights as persons without disabilities to the full use and enjoyment of any public facility in the state." Tex. Hum. Res. Code § 121.003(a).

56. "No person with a disability may be denied the use of a[n] . . . assistance animal" like Dante. Tex. Hum. Res. Code § 121.003(c). Wal-Mart violated this provision by preventing Ms. Carruth from entering Supercenter #69296801 with Dante.

57. "The discrimination prohibited by this section includes a refusal to allow a person with a disability to use or be admitted to any public facility, a ruse or subterfuge calculated to prevent or discourage a person with a disability from using or being admitted to a public facility, and a failure to . . . make reasonable accommodations in policies, practices, and procedures; or []

provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility." Tex. Hum. Res. Code § 121.003(d)(2)–(3). Wal-Mart violated these provisions and discriminated against Ms. Carruth by preventing her from entering Supercenter #69296801 with Dante.

58. In addition, "[a] person may not . . .harass" or "interfere with . . . or attempt to . . . harass" or "interfere with . . . an assistance animal." Tex. Hum. Res. Code § 121.003(j). Upon information and belief, Wal-Mart violated these provisions and discriminated against Ms. Carruth when Charles stepped over Dante.

59. State law does not address the use of leashes or tethers in public facilities, and only two questions are permitted if "a person's disability is not readily apparent, for purposes of admittance to a public facility with a service animal": "(1) whether the service animal is required because the person has a disability; and (2) what type of work or task the service animal is trained to perform." Tex. Hum. Res. Code § 121.003(l).

60. However, according to federal regulations, which authoritatively construe the ADA, a service animal does not require a leash or tether if it would either interfere the service animal's work or the person with a disability's use of such a device. 28 C.F.R. § 35.136(d); *see also Silguero v. CSL Plasma*, 579 S.W.3d 53, 68, 68 n.11, 69, 71 (Tex. 2019) (describing how "the purpose of the THRC aligns with the ADA's purpose"). If either exception is met, the person with a disability must maintain control of the service animal through "voice control, signals, or other effective means." *Id.*

61. Defendants knew that their actions and/or inactions created an unreasonable risk of causing Plaintiff greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

62. By violating Section 121.003, Wal-Mart would be "deemed to have deprived a person with a disability of his or her civil liberties," and "there is a conclusive presumption of damages in the amount of at least $300 to the person with a disability." Tex. Hum. Res. Code § 121.004(b)(1).

63. Plaintiff is entitled to compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and intentional discrimination.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Isabella Carruth respectfully requests that this Court:

A. Issue an injunction forbidding Defendants from implementing or enforcing any policy, procedure, or practice that denies individuals with service animals meaningful access to, and full and equal enjoyment of, Defendants' facilities, services, or programs in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*; and the Texas Human Resources Code.

B. Issue an injunction ordering Defendants to remove the ban against Isabella Carruth at Supercenter #69296801.

C. Issue an injunction enjoining Defendants from denying Isabella Carruth access to Defendants' facilities, including Supercenter #69296801, while accompanied by Dante, her service animal.

D. Issue an injunction ordering Defendants to train and/or retrain all employees, staff, and other agents on a regular basis about the rights of individuals with service animals under city, state, and federal law.

    E.    Order Defendants to take such affirmative steps as may be necessary to restore, as nearly as practicable, Plaintiff to the position she would have been in but for the discriminatory conduct.

    F.    Award to Plaintiff:

      i. Nominal damages;

     ii. Compensatory damages;

    iii. Reasonable costs and attorney's fees;

    iv. Interest on all amounts at the highest rates and earliest dates allowed by law; and

     v. Any and all other relief that this Court deems just and appropriate.

Dated: September 12, 2023                                    Respectfully submitted,

*/s/ David J. Hommel*

David John Hommel, Esq.
**EISENBERG & BAUM, LLP**
24 Union Square East, PH
New York, NY 10003
(212) 353-8700
dhommel@eandblaw.com
*Attorneys for Isabella Carruth*